The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. May it please the Court. Maryland and the District of Columbia seek to assert an implied cause of action to enforce the Emoluments Clause against the President of the United States in its official capacity. The District Court committed multiple fundamental errors in refusing to dismiss this suit. May I ask you to speak up just a little bit? Bring the microphone a little closer, if you can. And the plaintiffs are fundamentally mistaken in asserting that this Court is powerless to correct any of those errors at this time. Now, we have identified two different paths through which this Court can grant mandamus relief, but there's one overarching point that is of central importance, and that is this. The Court in Cheney made clear that separation of powers considerations are of utmost importance when considering mandamus petitions involving the President of the United States. For example, the Court quoted Chief Justice Marshall to say that in no case would a court be required to proceed against the President as it would against a private individual. And moreover, the Court said that the high respect that is due the office of the President must be considered throughout the entire proceeding. Now, what does that imply in this case? It implies the following. Their position is that even if the District Court erred in refusing to dismiss the suit, indeed, even if it clearly and indisputably erred in refusing to dismiss the suit, if every judge on this Court agreed it was error to refuse to dismiss the suit, their position is that this Court is still powerless to do anything about it, that the President must go through District Court litigation, be subjected to discovery into his personal finances, into the official act of his administration, and only at the end of all of that can he take an appeal from a final judgment, which will then promptly be dismissed. Counsel, can I ask you, I thought that it was your burden to show that you were clearly and indisputably entitled to mandamus. I thought that was one of the three requirements of mandamus relief. Is that not so? That is correct, Your Honor. Okay, so it's not that they are saying that you haven't met that. It's you having to demonstrate to us that you have met that, right? You're part right and part not right, Your Honor. It is true that we have the burden to show clearly and indisputably wrong. Right, clear and indisputable right. Their position, however, is even if the District Court was clearly and indisputably wrong, if every judge in the world would agree that he should have dismissed the suit, their position is we still can't get appellate court. That is absolutely their position. But you're skipping a step. You have to meet your burden first that Judge Motz is asking you about. That's right. So how? I'm happy to do that. I just wanted to make it clear. Well, I think that we have to talk about your burden because you would agree with me that mandamus is extraordinary relief. It is, Your Honor. Okay. Those who are demonstrating that you're entitled to this extraordinary relief. Absolutely. And so what I wanted to say at the outset was we have two means of showing mandamus. Let me interject there. While you're doing that, why don't you distinguish, as you see it, this case from what the D.C. Circuit did in a similar setting where they sent it back to understand it. So I don't actually, I'll answer both questions at the same time, Your Honor. I don't actually think that there's a material distinction between what the D.C. Circuit did and what this court did. The D.C. Circuit said the district court had clearly abused its discretion in refusing to denounce extra grants while mandating recertification. Without deciding whether it could grant mandamus on that basis, it then demanded and told the district court, why don't you reconsider? And with all respect, I just don't think that that is a material distinction between ordering the court to say, you clearly erred, you should grant certification, and telling a lower court, you clearly erred, why don't you reconsider? Well, the Supreme Court seems to have thought there is a big difference in granting mandamus relief and doing that. And that's, I think, why the question is well taken. So that's why I'm sorry to persist in this. Maybe you can explain to us why you meet the three requirements for getting mandamus relief here. So, again, the first problem, let me say one last thing about that and then I will finish that. The reason why I don't think there's a difference is because when you tell a district court they clearly abused their discretion and why don't you reconsider, only two things are going to happen. A reasonable district court will, of course, follow the court's instruction and basically grant certification. A totally infringing district court will thumb its nose at the court of appeals. And it's more than a clear abuse of discretion to get mandamus relief. You recognize that, don't you? That's the first problem. A clear abuse of discretion is the first problem. Right? Clear and indisputable error, if you look at changes. Clear and indisputable right is different than an abuse of discretion. But you're still skipping the first step. The first step is that you have to demonstrate is a clear and indisputable right. So what is that clear and indisputable right? You must think you have one. We have two different theories for it. I'd like to hear one. And if you could answer along with that, what was the district court legally required to do? What was it required to do that it did not do? What did it have to do that was not done in this case? I think our simplest explanation to all those three questions about what was the clear and indisputable legal error, is we think it is clear and indisputable that you cannot sue the President of the United States in his official capacity without, at a minimum, having an express statement authorizing such a suit by Congress. We think that it's clear and indisputable that the Supreme Court has thrice held exactly that. Well, I think that's your gloss on what the Court's held. But we know from current litigation involving similar issues that several courts have allowed suits against the President to proceed. So how can it be clear and indisputable? With all due respect, Your Honor, if lower courts are allowing Supreme Court precedent, that does not change the fact that the Supreme Court precedent is clear and indisputable. What the Supreme Court said in Franklin v. Massachusetts, the question in Franklin, was whether the President was subject to the Administrative Procedures Act. The Administrative Procedures Act said it covers agencies, and defined agency as any authority of the government of the United States. And what the Supreme Court said is that that language didn't expressly include the President, but nor did it expressly exclude the President. And it therefore reasoned that in light of the separation of powers, and the unique constitutional role of the President, textual silence was not enough, and you needed an explicit statement from Congress before the President could be subject to the Administrative Procedures Act. Counsel, can I go back to the standard here? You said that there was a clear legal error. And is it your view that mandamus should issue if a reviewing court thinks there's been a clear error? Because that's the standard we use on direct review when we're reviewing, for instance, factual findings. And I don't think anyone thinks we should grant mandamus on that ground. Again, there's a three-prong test showing clear and indisputable legal error, or clear abuse of discretion, either one. Well, I think you're clear and indisputable right. And I think you're taking that out of context from Cheney. I mean, I know the quote you're talking about, but it's in a paragraph that talks about how this is an incredibly drastic remedy, how it's traditionally been used only to ensure that a district court has not usurped sort of some gross abuse of authority, usurped the power that it doesn't have, been done outside its jurisdiction. I think saying clear error is not really the equivalent to what we're talking about here. Your Honor, I'm happy to accept any of those formulations, because we think any of those formulations equally apply when you have a suit that is against the President of the United States that is categorically foreclosed by state courts. Let me point, Your Honor, to this court's practice. This court has held an in-resource of applying the Supreme Court's decision in the outlaw association case that if a lawsuit is filed in the federal district court that should have been before a federal agency, that is the sort of clear abuse of patient observation that is warranted mandamus review. And I respect that. Well, you have a clear, as I understand your position, you have a clear and indisputable right in this case because the judiciary is seeking to assert over the presidency of the United States an authority that has never been asserted or claimed before. That is absolutely right, Your Honor. And the point I was trying to make about Sewell is if it is a clear use of jurisdiction, to trench on the primary jurisdiction of a federal agency, an agency that is merely exercising the President's executive power, then surely it is a clear use of jurisdiction to trench upon the President's autonomy himself. The President is the chief executive. Counsel, you referred to Franklin v. Massachusetts and cited it, I think, accurately, but that left open the possibility of a suit against the President for a ministerial act. And there's some other cases, the Clinton v. New York and the D.C. Circuit case against President Nixon. If you could address whether you think the relief being sought is ministerial or discretionary, I'd appreciate your position on that. I have two points about that. First, to directly answer your question, I don't think this is ministerial within the meaning of those cases. I think, in fact, the argument that it is is making the precise error that the Supreme Court of Mississippi v. Johnson rejects. In Mississippi v. Johnson, the plaintiff there might say that the President, it was ministerial, because the President, of course, could not act unconstitutionally. The challenge in that case was that certain reconstruction acts were unconstitutional. And they said, well, of course you have to comply with the Constitution, so it's ministerial duty. And the Supreme Court said, no, no, that is not what ministerial duty is. The question is whether there's any discretion. And if there's a reasonable dispute as to whether this act is unconstitutional, then that is not ministerial. But the second point I would make about this is that question is a question about whether it would be constitutional to allow a suit against the President. There's an antecedent step that I think is very important. At a minimum, before you have to decide that difficult constitution, at a minimum, Congress should have to expressly authorize it. Congress should have to say that the President can be sued for a ministerial act. That's the point of the Clear Statement of the Requirements as in Franklin. It's the point of the Clear Statement of the Requirements as in Nathan Fitzgerald. And it follows from the basic tenet of Constitutional Voting Rights. Why would this court construe an implied cause of action and action for the first time in this nation's history to present serious constitutional rights? This court avoids constitutional rights. And that follows also just from basic principles of equity. They're relying on the traditional common law equity power to join federal officials. Well, there are two things about that. They can't assert such a history with respect to the President. It's always been lower federal officials. And second, we know from cases like Grupo Mexicano that the scope of the The whole point of the Supreme Court's decision in Grupo Mexicano is that if you're trying to extend a traditional remedy, that has to be done by Congress because of separation of powers. And if that's true in Grupo Mexicano, where the dispute was over whether prejudged imprisoners or post-judged imprisoners could file a suit, surely it applies on whether you can extend a cause of action for lower federal officials to be President of the United States. We're treating this as if it's some ordinary run-of-the-mill case. And it is not that. The judiciary is asserting injunctive power over the President of the United States. And not only is it asserting that power, but it's asserting it in an unprecedented way because you can understand the role of the judiciary in a case like United States versus Nixon, where the courts were aiding in the enforcement of a judicial subpoena in a criminal action. And you can understand cases where the courts have stepped in to vindicate rights that have been infringed by government. But this is neither of those. The government is not acting directly against any individual. We're not confronted here with enforcement of a judicial subpoena in a criminal action. What's being asked here is just wholly unprecedented, which is that we are to create a cause of action on our own under this Emoluments Clause. We have no history to guide us. We have no precedent to guide us. No right has been conferred or created by this clause, and no remedy has been spelled out. And in the face of all of those things, we are to proceed alone to tie down the presidency in litigation. That is an excellent summary of our arguments, Judge Wilkinson, and all I can say in addition. Let me ask you, Richard. Let me ask you. There's no question. Let me ask you. Could you answer my question? I didn't hear a question, Judge. I'm sorry. Please. If you heard a question, please answer. Well, I think what I would say is if all of that is not enough to warrant my name's relief, I am just hard-pressed to understand how this Court and Henry Sewell can say merely quenching on an executive agency's jurisdiction is enough to warrant my name's relief. All the litany that Judge Wilkinson just explained just blows out of the water the case. What is your answer to the question? I understand what you said. You said you agree with it. What is the answer to the question? That this is exactly the sort of extraordinary usurpation of jurisdiction that warrants my name's relief. There is no authority, historical authority, to sue the President, no historical authority to have a cross-examination, enforced denial of responsibility against anyone, to do all of this and not even allow an interlocutory appeal. It's not only that he refused to sue the case. So the question goes beyond just whether or not this is something the President would challenge the separation of powers. It really goes to the question of is he above the law? And the allegations that are here are really essentially discovery that's being sought from third parties, primarily businesses. It's really not a prerogative of the executive branch that's being sought here. In order to tie that in, you've got to tie him in so that ultimately you say whatever the President does puts him above the law and out of the reach of being able to deal with issues that may be squarely there. But let me ask you a more fundamental question because you started your argument out to the effect that you're saying they say you can't even be here, which before you even start talking about mandamus, you have to look and determine, well, is mandamus available in the instance where a district court has given a denial of certification? And it's clear that I don't know of another case that's done it in this fashion. If you want to talk about something that's never happened before, the 10 circuits that dealt with, nobody has said a district court can be taken over by the appellate court. The appellate court, in this instance, cannot usurp power to do it. Congress spoke. And it really comes down to a congressional word, share. But let me finish. And in an instance of the court, the district court, saying denial of certification, in that particular instance, there's really no precedent for what's happening here today. That's not true, Your Honor. So let me say three things. There's one circuit. You would have to agree, though, that the weight of the authority is against you on that point. My word is precedent. Let me finish. My word is precedent. There's no precedent for this. There may be another circuit, but the weight of authority, as Judge Moss has said, goes entirely the other way. So let me say a couple things about the weight of authority. First, as Judge Moss recognized, there is one circuit that is squarely not exactly what the 11th Circuit directed the district court to certify. And their only distinction of that case is the district court there hadn't yet ruled on a certification motion. That's a fortiori for us. The 11th Circuit didn't even let the district court exercise its discretion. It thought it was so patently obvious that certification had to be granted that it directed it without even giving the district court the chance to totally screw up, which is what the district court here did. Point two is both the D.C. Circuit in the Parallel suit and the 5th Circuit in the Most Felon case have done what is essentially the functional equivalent. They said that the district court clearly abused its discretion, and then they remanded for the district court to reconsider. Now, honestly, I have a hard time understanding how any honest, reasonable district court judge, in the face of that sort of work, would do anything other than what Judge Sullivan in D.C. did, which is promptly turn around and certify. The only difference between that and this is a completely intransigent judge who could care less that a panel of this court said he clearly abused his discretion. Promptly turn around and certify as it was sent back to the district court? Yes. To do it? That wasn't done here. Your Honor, I think the panel was absolutely right that it is pointless to remand it to the district court. How do we know that? Because all that can happen is the district court can thumb its nose at this court. Do you have any case where a court of appeals has used mandamus as a vehicle to order a district court to dismiss a case? So, in the 11th Circuit case... No, no. I'm asking using mandamus to grant relief, to grant the substantive relief of ordering a district court to dismiss a case. This court's decision in Sewell. The point of this court's decision in Sewell was the case should have been dismissed because it should have been in the NLRB district. Right. No, but I'm saying that the district court, in this case, went through all the hoops. It did everything it needed to do in order to consider the issue of certification. The case was properly before the district court. It wasn't a question that it should have been in another forum. Our point is that it should be in no forum. In Sewell, the point was that the district court erred in dismissing and putting the case into an executive agency, and this court granted mandamus to say, no, the case should go to the agency. Our point is the suit can be anywhere. Right, but it's taking substantive action. In other words, this court, you're saying this court can use the vehicle of mandamus to decide an issue in the case, essentially just because it disagrees with what the district court did. No, Your Honor. I agree, as a lot of the questions said, that it has to be a clear and indisputable legal violation. But how did the district court usurp its authority? You still haven't told us that. Again, for the same reason that in Sewell, if a district court takes jurisdiction over a case that belongs in front of an administrative agency, this court and the Supreme Court have jurisdiction. Has there been a case, can we point to any case where the judiciary has asserted the power to enjoin the President of the United States in the exercise of his official duties? You can call it ministerial, you can call it discretionary, but what precedent is there for the courts to step in and enjoin the President in the exercise of his official duties, and where is the limiting principle to that? The only case that I am aware of that has done such a thing, and with considering it and holding it at the appellate level, is the 1976 case in the D.C. Circuit called NTEU. The three times the Supreme Court has considered this issue of whether you can have a suit against the President for his official actions, three times it's come up and three times the Supreme Court has rejected it. In Franklin, in Mississippi v. Johnson, it said it was just illegal. In Franklin, and in Nixon v. Cheryl, it said at a minimum, Congress had to speak clearly. So I think it is absolutely the case that if this court can protect an executive agency's minor interests... Mr. Mukai, you know, that question sort of raises the issue of regressibility and the appropriate scope of any remedy against the President. But you're making an assumption that that would be the actual remedy, an injunction against the President. But if I understood the Second Circuit's opinion in a related case, they set out a number of different possibilities, possible remedies, including an injunction not against the President, but against the business hotel itself or the third parties who might be engaged in providing services or paying for services. That would not result in an injunction against the President. I don't think the principle that I've been asserting, that the President isn't subject to suit, absent a clear statement of Congress, is limited to injunctions. Well, but I'm just responding to the point about whether or not we necessarily, if this case goes that far, and we're a bit of a far field here, but it's not necessarily the case that any remedy would result in a direct injunction against the President. That may be true, Your Honor, and I'd be curious to hear what relief they're seeking. But to emphasize, the point that I made that it doesn't matter what the precise form of relief is, whether it's injunction or declaration or anything else. The point is that absent a clear statement from Congress, none of that runs. So what is the remedy? What is the remedy in this case, then, for a violation alleged? I admit that you denied that there was a violation. So what's the remedy? Your Honor, the first question, before you get to whether there's a remedy, is the question whether they have the right to sue in the first place. No, no, I'm just talking about if you deny the fact that there is no judicial remedy, then what remedy is there to control what Judge Wynn has indicated to the President, who might be above the law? Well, at the very first step, Your Honor, Congress presumably authorized someone to actually sue over a non-judicial violation. And then we could have an interesting and difficult constitutional question about whether that lawsuit is permissible. But Congress has not even done that. And at a bare minimum, the separation of powers and the handling of constitutional avoidance say that this Court should not allow a suit to proceed against the President of the United States, where Congress hasn't even bothered to authorize a suit in the first place. Mr. Mulvaney, right here, right in the center. If the emolument clause, first it provides compensation for the President, so it's a provision, and the other is a prohibition of extra compensation. What if Congress decided to reduce the President's salary while he's in office?  It's an interesting question, Your Honor. I haven't thought about it. You have to, because you're saying categorically that's an unprecedented suit. That's what you say why we should do it here. And you say if Congress hadn't provided a remedy for it, then you suggest Congress would have to do it. Well, Congress would be the one acting against the President's rights. Wouldn't the courts be the place that he would have to seek remedy? Look, I will say the same exact thing as a high-level general, as I said throughout. The question would be, is that suit authorized? You would have to ask, is there a jurisdiction? Is there a cause of action? And I just don't know the answer to those questions. I know there are a lot of federal statutes that govern whether you can challenge the pay of a federal employee. It would have to be an answer. Even the judges themselves were able to go to the court to question their compensation. And that very well might be the case. There very well might be a cause of action. Well, there are cases involving constitutional provisions outside the Bill of Rights that have been held to be non-justiciable. The Guarantee Clause, the Ineligibility Clause, the Incompatibility Clause, the Impeachment Clause, the Receipts Clause. So there could be so-called infringements to all these clauses, but there are many, many clauses that are structured, or at least outside the Bill of Rights, that the Supreme Court has held to be non-justiciable. Look, that's true, Your Honor, but we don't even have to go anywhere near that far to say that at a minimum, before you can have a lawsuit over it, maybe Congress should have to authorize such a suit. Judge Motz, if I can make the last point, because you asked before about the body of case law, and I don't want to miss this. Even their cases, their best cases, take, for example, the Seventh Circuit case in Ford, which they cite quite a bit. Even that case recognized that there has to be some safety valve if a district court clearly abuses its discretion in denying the file of mandamus. That's not at all what the court said in that case. The court assumed, for the sake of argument, that there might be a way to direct mandamus in a situation like this, and it said nothing about a clear abuse of discretion. It talked about improper motive, egregious situations. It did not adopt an abuse of discretion. It can't be abuse of discretion, because you need to demonstrate a clear and indisputable right. Again, Your Honor, that's just not the language in Cheney. So you don't think you have to have a clear and indisputable right? I think clear and indisputable legal right or clear abuse of discretion are, it's not like mandamus is limited to legal errors. Counselor, is the standard you're looking for, the one you used before, totally screwed it up? Is that the way you describe the district court ruling here? I do think that that is... Because I read the district court opinions with some care, and what I saw was a very reasoned exercise of discretion on this interlocutory opinion question. And I totally understand that you have a good faith disagreement, and that there is room to debate these issues. But the idea that we are some kind of a rolling commission, where we're going to grant a petition for mandamus, if someone can convince us that the district court totally screwed up their case, seems to me to open the door very wide. Your Honor, again, all I can say is I do not know how you can reconcile that proposition with mandamus. Henry Sewell did exactly that. Because they thought the case was in the wrong forum. Nobody thinks that these people filed their lawsuit in the wrong forum, that the district court did not have jurisdiction to hear this case. It's even worse if you sue the President when he can't be sued anywhere. Why is it... It makes no sense... And that is your position. The President cannot be sued anywhere. Without an express authorization by Congress, he certainly cannot be sued for his official action. I think that is correct, Your Honor. What is the official nature of the action of taking money from foreign governments? Tell me what's official about that. I'll say two things about that, Your Honor. The first is, I think that question is probably best directed to Plankus, is they sued him in his official capacity. Well, no, I'm asking you. I'm interested. And the reason why I think they sued him in his official capacity is because the Emoluments Clause imposes an obligation on him by virtue of his office. It requires any officer who is covered by the Emoluments Clause to not accept prohibited emoluments. So if these are prohibited emoluments, and if he holds an office of profit or fraud, it is by virtue of his office that he can't accept these payments. So it is true that it involves his private financial behavior. But the only reason his private financial behavior is subject to suit is because he holds his office. That's why it's an official duty, and that's presumably why they sued him in his official capacity. And if you disagree with that, then we have an easy solution to this case. No, I'm not saying I disagree with him in his official capacity. But you do have a clear and indisputable right when the suit is under a clause that confers no right. I think that's true. The Emoluments Clause confers no right upon anyone, and yet we still have a suit against the president under a clause that confers no right and provides no remedy. And I say once again, this is an overextension of judicial supremacy over the office of the presidency. It's unprecedented that we would have something that is not in the provision, that is not in the Bill of Rights, where there is no direct evidence that the president has directly harmed anyone. And that a suit is generated, essentially, we're up here making it up. We're winging it. There's no history that authorizes it. There's no precedent that authorizes it. There's no right conferred that authorizes it. There's no remedy set forth that authorizes it. We are winging it. And the novelty of this, if this isn't off the rails, then I don't know what is. There are suits involving congressional subpoenas and everything that presents closer questions. But this one's a lemon. It's the weakest of the cases that are springing up like ginseng weed against the presidency in this environment. Others may have greater merits, and I hold no grief for the conduct of this president or of any president, but what I do care about is the future of the judiciary and whether we should be asserting an authority with such a slight and unprecedented foundation as is contended here. Your Honor, I agree. I think that under Cheney, it would make a mockery of the respect that is due to the high office of the president, which must be considered in every stage of the proceedings. That's what Cheney said. But there's no precedent because no president has done this. Essentially, what you're saying, I understand, is that we have an emoluments clause. No doubt about it. That's the law. That a president can violate it in every instance. You can have a hotel that competitively operates against the state of interest here. You can have interests in which you can invite foreign dignitaries openly to come in and take 500 rooms of the Altamira Lago. You can do all these things, but at the end of the day, you're saying there is nothing you can do about a president, if you conceitedly said, because this is in a life most favorable, violated it in every instance, but your position is nothing can be done. Is that correct? My question is, is that correct? Nothing can be done to remedy a president who openly and without any reservations violates the emoluments clause. Nothing can be done because the words would be, he is above that law. Is that correct? No, it is not correct. It is a law? It is a law? As the law stands right now, just to amend what the judge is saying, there's no new action by Congress. Is there anything that can be done? Not in the judicial remedy, and that does not make him above the law. That is what Cheney and Nixon versus Fitzgerald- How about in this situation, where we know that the president holds personal disdain for the emoluments clauses? He said they are phony emoluments clauses. Your Honor, I didn't get your point out. Question, please. He said they are phony emoluments clauses, and the president takes the oath to protect, preserve, and defend the Constitution. Now, he characterizes them as phony emoluments clauses. Now, what's the irrelevancy of that? Your Honor, I think any fair characterization of what he said is he's calling the claims here phony. He's not disputing the existence of the emoluments clauses. He's called them phony emoluments clauses. I understand, Your Honor, and it was either a tweet or an off-the-cuff statement. They are two clauses of the Constitution written in 1787 at Philadelphia, not in the Bill of Rights. They were written at Philadelphia in 1787. They've never been amended, and no one is disputing the emoluments clauses exist, and no one is disputing that they're important. Any fair characterization of what the president was saying is that these claims are phony which I do think they're true. I'm happy to get into the matter. I know I'm well over my time, and I would not be. Let me ask you if I could. With respect to the D.C. Circuit case, is it your view when they faced the mandamus question and sent it back to the district court, was that an erroneous decision or simply an alternative form of relief? I think that was a permissible exercise of their discretion, Your Honor. I think they also could have done what we're directly asking this court to do. Well, if that's permissible, then there wasn't a clear and indisputable right to mandamus relief. No, I don't think... Well, then if there's no clear and indisputable right to mandamus relief there... They denied it without prejudice, Your Honor. I beg your pardon? The D.C. Circuit denied it without prejudice. They gave the district court a last chance to avoid... That's your reading of it, but they didn't grant a mandamus relief. Right. And you said there was no error. No. They denied it without prejudice, Your Honor, and I feel fairly confident that the district court there had thumbed his nose at that panel and said, you know what? It's not certifying in any way. I think I would have a pretty good chance of getting a mandamus relief. And so then the question you have to ask yourself is why? Why would you construe a federal statute to put the appellate courts and district courts in that position where an appellate court can concededly tell a district court it clearly abuses discretion and then just hope a district court doesn't thumb its nose at it? My friend, Judge Keenan, had a question that we intercepted. You know, Mr. Blumenthal, we've listened to argument for several minutes yet, but you still haven't told us what action was the district court legally required to take. So... The theme throughout your argument is the district court was wrong because there isn't a cause of action... ...or at least clearly abuses discretion. One, we think that it should have outright dismissed the suit for a multitude of reasons... So you disagree with what the district court did. But again, we come back to... How is that usurping his authority? For the same... I hate to repeat myself, but for the same reason that it was an usurpation of authority in Sewell for the district court to retain jurisdiction over a case. If we think Sewell's distinguishable... Excuse me, do you have any other authority? Because it's silly for us. I think that Judge Keenan's already pointed out to you what might be a distinguishable factor between this case and Sewell. But you have no other authority, right? Well, so I was going to say, again, and maybe Judge Harris disagrees with me about this, in the Ford case, when confronted with exactly this fact pattern, right, what do you do if, for example, a district court obviously should have dismissed or at least obviously should have certified the court's suggestion that it might be a possibility that what you would do... I agree, only a possibility that what you would do is actually just mandamus the straight-out denial of the motion to dismiss. So I agree. It's not a holding. But even their cases recognize that. And I think there's a good reason for that. Just imagine a simple hypothetical, which, in fact, is an even hypothetical. It's the fact that the fifth circuit case was signed by McWilliams. Imagine you had a district court that said the following. I know that circuit precedent requires dismissing the suit. I know. Clear as day. I don't care. Circuit precedent is wrong. But that is not what the district court did here. It is a... You might not agree with it, but it's no flapdash opinion. Look, Your Honor, their proposition of law, what they are saying is that even on my hypothetical, no reason. Even if the district court just flouts circuit precedent and says, I'm just not following it, I don't care. Well, you're turning the argument on its head. You're saying no matter what the district court did, you're entitled to mandamus relief. No. I've said repeatedly, and I'll say it again, if this was a reasonable conclusion, if reasonable judges could disagree, then I agree. We don't get mandamus. So if you think what you did is reasonable, I'm not going to get your vote, and I understand that. But... You have to have a clear and indisputable right, not just reasonable. Your Honor, for all the reasons I've said and many of the reasons Judge Wilkinson laid out, I think it is clear and indisputable. And if Your Honor disagrees, then we're going to... No, I think that's your strongest position, is to just say that this goes so far beyond previous exercises of judicial authority, and the suit has such a shallow foundation that there is a clear and indisputable right to have the case dismissed. That's right, Your Honor. Look, again... Mr. Moupin, are you familiar with the Schlagenhof case? The Supreme Court there... Not enough to say yes, but I know what you're talking about. The Supreme Court there authorized and defined a writ of mandamus similar to Enchainey, but it focused on... It said, the writ is appropriately issued when there is a usurpation of power or a clear abuse of discretion. Yes. And your argument, as I understand it, is both, that there was a usurpation of power by the district court in taking cognizance of these cases, and in refusing to certify when the district court said there was no disagreement about its conclusion in this case. It basically said it was right, and no one can disagree with it. Right. And to circle back to Judge Kenan's question, because you've asked a couple of times what do I think the clear error here was, and it's the two pieces that Judge Niemeyer just said. One, we think it was clearly wrong to not have switched the case outright. But second, at a minimum, we think it was clearly an abuse of discretion. And as Judge Niemeyer points out in the Schlagenhof case, and has repeated in the Enchainey case, it is at the minimum of clear abuse of discretion to not have even have said that these questions are substantial enough to warrant interlocutory appeal. Virtually everything they are arguing is totally unprecedented. And not only is it totally unprecedented, most of it is squarely in the Supreme Court To say that that's not even a substantial legal question that warrants an intermediate interlocutory appellate review in a case where it's the president, where the Supreme Court has said repeatedly that the respect that the judiciary owes him must be considered at every stage of the proceedings, including mandating it. The idea that he can't even get an immediate appeal to determine whether a suit against him should be dismissed as a threat to justice. The Supreme Court, in confronting this issue, basically postponed the immunity question, which we're going to address next, in order to prevent appeal. And in connection with the certification, basically answered the core question, is there a substantial ground for a difference of opinion on this? And the court said no. Even though the court's decision had zero precedent to support it. It had less than zero precedent to support it, Your Honor, because on standing, it was squarely in the teeth of the only other case that had addressed the issue. The district court in NY had agreed with us that there was no standing and no... That's the only issue, only case it had against it. I mean, it had it available at the time, and it basically still said there's no reasonable ground for disagreement, saying the Second Circuit District Court was... And now, of course, obviously, on appeal, the Second Circuit reversed that, and this court reversed it. So now we have dueling district court decisions, dueling court of appeals decisions, the idea that anyone could say a suit against the president, that that's not a substantial legal question that warrants intermediate... DC Circuit saying that the failure to certify in a very similar context was a clear abuse of discretion. Clear abuse of discretion, Your Honor. That's right. And Judge Ross, again, I understand it's not this case. I understand I'm saying I'm hypothetical, but the fact of the matter is, their legal position would mean that even if a district court just said, I'm not applying circuit precedent, I think circuit precedent's wrong, Supreme Court will vindicate me, not a substantial legal question, certification's not. Their position is nothing this court can do about it. You don't have a case from this circuit because the underlying opinion has been vacated. Tell me, what do you say are those official duties that would be impaired if the plaintiffs didn't get... Well, so there are two different aspects of that question, Your Honor. In terms of the relief, it's imposing restriction, whether it's through declaration or injunctive relief, on his financial arrangements because he holds office. But let's not skip to the relief because I think a very significant aspect... Tell me, if there was relief, what duties would be impaired? What official duties by the president would be impaired? Again, I just told you... In other words, what difference would it make to the president in terms of how he performs his duty if he got the relief? He's being penalized for office by being forced to divest his assets. What official duties would be impaired by the president if the requested relief was granted to him? Your Honor, I will say it again and there's nothing more I can say, so if you don't mind... Is the answer none? No, the answer is that you're penalizing him for holding office by making him divest his assets. If that's not a penalty on his official actions, Your Honor, not to be too poor about it, but if someone told you that you can no longer be a federal judge unless you gave up all your money, I think most people would think that that is impairing your official actions. That's not the relief that's requested. Again, I'd be happy to hear what relief they're asking because as you may be aware, it was not at all... Stop doing what you're doing. The injunctive relief, what about that? Injunctive relief, if you say you can't do it anymore, just don't do that anymore. Not going to worry about what you've done. What you do is going to be impairing. Your Honor, I can't give you a better answer than what I already gave you. The other thing I will tell you, though, that I do think is very important is you have to remember that there's going to be litigation before we get... I have to go back to what you said to Judge Wynn about asking him... telling him he can't be a federal judge unless he gave up all his money is the issue here. It's not. It's telling him he can't be... he can't use his federal judgeship to make money. That's what we're talking about. Fair enough. And that's still, I think, clearly an incursion on his official power, right? It is restricting his ability to engage in financial transactions because he is the president. The presidency to make money. And look, to be totally clear, that's not an accurate description of the facts. I mean, if you assume... I'm just saying what you said to Judge Wynn is not accurate. That's not, at least in my view, what... Fair enough, Your Honor. Okay. Then go on to whatever you wanted to say. Whatever their theory is of what a mnemonic is, their point is because he holds office, he can't engage in certain financial behavior. My only point is that is obviously an incursion on his official power because he's penalizing his financial behavior because he holds office. Thank you. Counsel. Counsel. Thank you. Thank you, Your Honor. Good morning, and may it please the Court. Lauren Ali Khan for the District of Columbia in Maryland. I want to start this morning with my mandate that it is not appropriate to certify district court positions under Section 1292B because I do believe that's a positive of the case. Of course, that's one of many issues in the case. And so if this Court goes further, it should deny the request to mandamus dismissal because Congress has standing and a cause of action to be equitable relief against the President under the Constitution's emoluments clauses, and they adequately stated the claim that the President is receiving foreign and domestic emoluments through the Trump International Hotel. So the beginning of Section 1292B was a limited exception to the final assessment rule. When Congress contemplated it, it had a proposal before it that would allow interlocutory appeal solely at the discretion of the Court of Appeals. That's similar to what we see in federal rules for the Civil Procedure 23F. And Congress rejected that and rejected it at the recommendation of the Judicial Conference because this was proposed by the Judicial Conference. And what they wanted was a rule that required the concurrence of both the district court and the Court of Appeals before interlocutory appeal could be taken. Well, let me ask you as your opposing counsel about this D.C. Circuit case in a very similar setting. And the D.C. Circuit determined that the district court's order in that case orders squarely met the criteria for certification under 1292B and it abused its discretion in not so certifying the case before it was sent back. So was that an erroneous decision by the D.C. Circuit, and how is it different from this case? So I do think that it was erroneous in this way. Because when the district court has declined to certify, that is the first and last word on the matter. So they were wrong. So I do believe so. But I think what's important about the D.C. Circuit's decision is that it did not take jurisdiction under 1292B. All that it did was send it back to the district court for reconsideration. I think if this court disagrees with me or thinks the D.C. Circuit got it correct, that's the most this court could do. Except the court did say the 1292, the failure to certify was an abuse of discretion. And if you look at 1292B, it has three requirements, only one of which is that core requirement, is that there is a substantial ground for a difference of opinion. Of course, the other two, it has to be a controlling question of law, and nobody's disputed that, and it has to materially advance the litigation. But the core question is whether there is substantial ground for a difference of opinion. If the court finds that that is so, then it must, not may, it must certify. The statute is mandatory. And so the notion that you say that the court can just look at this and say, I choose not to do it, is not on the table. 1292B does have structure, and in this case, the question was whether the district court adequately addressed the question whether there was a substantial ground for a difference of opinion, and both the D.C. Circuit and the panel opinion in this case concluded that the district courts misinterpreted that or misapplied that or ignored it, and therefore should have certified it. And the D.C. Circuit suggested to send it back and have it certified, and as you know, it was certified, and it's back up, and they just argued that last week in the D.C. Circuit. And here, we basically said that we could send it back and have it come back up, which was sort of a ministerial task after we had found that they wrongfully denied certification, and we just applied the certification. But the question is, if you would wish us to follow the D.C. practice, we have a petition for writ of mandamus before us. We could say 1292B certification denied before us. We could do exactly what the D.C. Circuit did, send it back and tell the district judge to certify. Is that what you want? Now, Judge Newman, I have a lot in your question, so I want to make sure I address it. So first, yes, I agree that 1292B has structure. The district court has to be of the opinion that it meets the criteria, and here the district court, in a thorough opinion, went through each of the grounds, for why 1292B certification was appropriate and was not of the opinion that they were controlling questions of law as to which there would be substantial grounds of opinion that would materially advance litigation. And as he noted, and I think every court has considered the question and agreed, all three need to be certified. How could the court address a lawsuit under the Monuments Clause on which there's only one opinion in the country, Southern District of New York, and which went against what the district court said, and say there's no substantial ground for a difference of opinion? It was creating a lawsuit out of whole cloth. The very arguments Mr. Mupan made here were made to the district court. You can't sue the president. The clause doesn't create rights. It goes on and on. And yet there can be no ground for a difference of opinion? And everybody's sort of shocked at that notion, that you could make that finding, especially when the only case on that point is against the district judge, and he still says there's no difference. Why can't that be an abuse of discretion? Well, the district court acknowledged the fact that there was the SD&I case. It's a fact of the hand. He basically said without analysis, oh, that's not applicable here because it involved restaurants and private hotels as opposed to the International Hotel in Washington. Respectfully, Judge Niemeyer, what he said is that it's a controlling question of law to assure the disagreement's opinion when there's a question about what law applies, not how the law can be applied to the fact. And so there's no dispute between the district court's opinion here and the SD&I opinion that competitor's standing doctrine is applied to law in the Supreme Court. So there is a difference of how the law applies to the fact, and I think this comes from the Farland case that's cited in the president's opinion. Mr. Allikin, there was an interesting discussion about interlocutory appeals and mandamus and the rest. I fear we can get a little bit lost in the weeds, and before we start off on this journey, I would like to have some idea of where we would end up and whether there is even the slightest merit to this suit at all. And a basic question that I have is where in all of this suit, where is Congress? And I have a feeling that Congress has just been left on the back doorstep to just freeze in the cold. There's no congressional subpoena here, as there is in some of the other cases. There's no congressionally created cause of action. If Congress were concerned about the emoluments clause, it could have an emoluments provision inserted as an article of impeachment. It could have passed a disclosure statute of some sort with respect to emoluments. It could have established a framework that would have given the president or whatever officeholder some idea of what an emolument even is. But what concerns me about this case is that Congress is wholly absent from it. We're just proceeding on our own, or on our own two, without a congressional subpoena, without a congressional cause of action, without any kind of action of any sort with respect to emoluments. The framers, Judge Wilkinson, put into the Constitution two provisions preventing the acceptance of emoluments. It's up to this court to decide how to inform and interpret those clauses. Congress, to be sure, has the ability to consent to foreign emoluments, and I think it does have a framework. You say interpret it, but you're asking us to sketch something off a completely blank slate without any kind of congressional input at all. And, you know, in the Steele C case, Justice Robert Jackson counseled against a single branch of government charging headlong into matters of the highest moment all by itself. Now, in that case, it obviously concerned the actions of the executive. But how much more true is that lesson in the case where the least accountable branch of government, the least democratically accountable branch of government, the federal judiciary, is charging off on its own without any backup or input from the legislative branch? Isn't that problematic? So I have two responses to that, Judge Wilkinson. The first is that it's longstanding that plaintiffs may seek injunctive relief to enforce specific constitutional provisions. That we know from Armstrong Congress can take away, and it has it here. So that's the input of Congress. Secondly, we have a framework. Congress, through things like the Foreign Gifts and Declarations Act, the executive branch through the Office of Legal Counsel, things from the legislature, have informed emoluments clauses. And what we know is that- No, but many of these structural clauses are not self-executing. And it's crucial that the emoluments clause is not placed in the Bill of Rights and confers no rights. And I would say most of the provisions in the Constitution outside the Bill of Rights are not self-executing. It depends on something that Congress has to do to get the ball rolling, if you will. And to say that we can do all this on our own, we're coming to a position where our political differences, and there's a political overlay to this whole action, make no doubt. But our political differences are seeming to me to be increasingly resolved through litigation rather than through legislation and elections. And that's what you're asking us to do, which is to really undertake unprecedented assertion of judicial authority. And as I say, we're coming to the point where elections and legislations are becoming relatively less important, and judicial ethics are becoming relatively more important. And we're, again, acting on our own. How much on what should be so much firmer ground? If we were acting in concert with Congress or arm-in-arm with Congress rather than just charging ahead on our own motion without any backup or foundation. Now, Judge Wilkinson, I think the Supreme Court addressed this in free enterprise when it said that as a general matter, that you don't have to look at constitutional provision by constitutional provision. And so we know that in free enterprise, you can look at the appointments clause. In bonds, you can look at Tenth Amendment questions. In shoddy, you can look at bicameralism. So I don't believe it's limited just to the bill of rights. But I think that it's longstanding where a federal officer is acting ultramarine, which the President is doing here by accepting monuments despite two very clear constitutional provisions, that equitable relief is available to enjoin that. And so we think that we are on a firm footing, dating back to Michael Young, to McNulty, to a series of cases, in which courts have not hesitated to restrain unconstitutional action by federal officers. None of those involve, I think we're stating the obvious, that none of those cases involve the presidency. They're federal officers or sometimes state officers in general. And as I read the cases, you know, all of those fall into one of two buckets. They fall into either the bucket, there's an underlying cause of action, which we don't have in the monuments clauses. And number two, they fall into the bucket of using litigation to address the defense to an enforcement action. So all those cases, A, don't involve the President, and B, fall into those two buckets, which this doesn't fall into. And when you turn to the President that relates to the President, It seems to me the only sliver of an argument is possibly the notion that there's some ministerial act here, but there's no Supreme Court case that says that squarely either. So, I mean, to refer to those cases, we're really talking apples and oranges, aren't we? So I don't think so. And I have three responses. First, as the V.C. Circuit has held in both NPPG and Clinton v. Swan, the fact that there's no subordinate official to sue does not act as a bar in proceeding against the President. When there is, for example, the Department of Commerce or a lower federal official, obviously you would prefer that the relief fund against them. But NPPG squarely says that it would result in form over substance, where you say that the President himself is immune simply because there's nobody else to sue. And that's a D.C. Circuit case, correct? That's a D.C. Circuit case. And they repeated similar lines in Swan v. Clinton. And then next, about the cause of action question, I think the Supreme Court was quite clear in Armstrong that unless Congress has taken away the ability to exercise provisional equity jurisdiction, it exists to enjoin ultramarine actions by federal officers. And so I do think that those are the two strands of your question, and I think the case law squarely is in our favor on that. Let me ask you one other question related to something you said earlier. You said there's two times the Constitution deals with emoluments. There's actually three. Is it your position that the definition of emolument in Article I, Section 9, is the same one you're asserting in this case? So, yes, there are two provisions that prevent Judge Quattlebaum's acceptance of emoluments, the foreign and the domestic emoluments clause. There is also the clause that talks about the emoluments of office. Are you saying that – I'm sorry, go ahead. So, Judge Quattlebaum, I think that emoluments, that term, means profit, gain, or advantage. In all three of those constitutional terms, we know, however, when they talk about the office or the emoluments whereof, they're tying it specifically to the particular office. We don't see that in either the foreign or the domestic emoluments clause. And so that's how we know the Congress, the Supremers, were intending that to be given its broadest reading. And so those are broad, pro-galactic provisions that prevent the President from doing precisely what he's doing here. So your position is emolument in Article I, Section 9, should be read with the same definition that you say applies in Article II, Section 1, and Article I, Section 6? So the definition of the word emolument is not changed, but it's given context for the words around it. And so if you have emoluments of office, then you know it's tied to the office. So when you have, for example, the foreign emoluments clause, which is any emoluments are present using any four times, then you know that you're supposed to be reading that broadly. So obviously, the words of any particular constitutional provision have to be read in the context of a company in which state. And in the foreign and domestic emoluments clause, you know that they were meant to be quite broad and reach any profit, gain, or advantage. So if the President were to buy a bond issued by a locality or a state, under your definition, it would appear that the interest that the President would receive on that bond is an emolument. So not necessarily, Judge Agee. And I think this follows from mill scanning, which says we look at not just the text, but history and practice. And we have here at the OLC issued several opinions that deal with issues like Your definition seems to run contrary to that. I mean, you keep emphasizing any, and you have a very broad definition of that. And you just said that, well, not necessarily. So how would you differentiate one state bond from another state bond under the domestic emoluments clause using your definition? And so, Judge Agee, I think how you would do it is just look at whether or not the President is getting any particular type of advantage that's not available to everybody else. If it is the same interest on the bond that any bondholder is entitled to, I think following from the rate OLC opinion, which dealt with pension payments, which are quite similar, I think that would not fall about the emoluments clauses. However, if the President was receiving a particularly high interest rate or something different that was a discretionary decision by the state to give him something that other people weren't entitled to, that would certainly be a profit, gain, or advantage that could fall to the emoluments clauses. So your definition now, unlike the complaint, is a profit, gain, or advantage that is different than what everyone else gets? So I think it's a profit, gain, or advantage, and then I think under no standing you look to how the Comptroller General and the Office of Legal Counsel have interpreted it to give it context. And so what we know from those opinions is that when decisions are non-discretionary, for example, if the President weren't getting a driver's license, then that's not going to be something that is a profit or advantage that is going to pinch. It's something that is mutually and non-discretionally available to everyone else. So it's not any profit. It's only certain profits. So I think it's not a profit or advantage when it's something that is available to everybody else in a non-discretionary basis. Well, it has to be a profit if you bought something and you're getting a return on your money. It has to be a profit. So the Reagan OLC opinion thoroughly analyzes this and says because it is something that is a non-discretionary determination that is readily available to everyone else in that pool, here it would be the bondholders. And so the bottom line of that would be money in the pocket. What about the situation where somebody comes into office and owns assets that have been giving them dividends? In this case, the hotel was in existence before the President took office, and he was receiving the income from the hotel before, like anybody else who would own a hotel or a motel or any other business enterprise. Does that fall into the class of available to anybody else? Before he was President, he was absolutely entitled to foreign investment. I understand, but he didn't change his status there, except that, as I understand it, he's not even receiving those benefits. He's doing something else. He donated them to the government or whatever it is. But set that aside for the moment. His status with respect to the hotel is the same as it was when he was a private citizen, and every private citizen who invests in something is entitled to receive the return. So he just held on to that asset while he's President, and he's getting the very same, absent his donation now, he's getting the very same benefit that any other member of the public would. What I'm trying to do is to find out what the scope of your distinction in response to Judge Agee's question is, because it seems to me he's in the same class of persons that receives interest on bonds. And you're saying bonds don't apply, but yet income from the hotel applies. And I don't know where you get that from the Constitution. I don't see it. I respectfully disagree, Judge Niemeyer. What changed when the President became President was that the emoluments clause was suddenly applied to him, which means that he needs to cut off any receipt of foreign investment. Well, then why doesn't it cut him off from the bond interest? In other words, you're in response to the question, and this may be immaterial, the whole operation here we're talking about, but I'm just taking you to task for you're now creating these niceties in what is an emolument, and you're saying the interest on a bond is not an emolument. For some reason, I don't know why, under your definition, it seems to me it would cover that and cover everything else. And I'm happy to explain why. If the interest on the bond is the fixed amount that he is, whether he's President or whether he's not, and it's the same amount that anybody else receives, such as a nondiscretionary benefit, at the time and again, the Office of Legal Counsel and the Comptroller in general have found it not to be an emolument. If the President, by virtue of becoming President, and especially because he has made himself available to accept, and, in fact, invited himself— So let me understand. I want to make sure I understand on this. What is it you're asking us to do? So I think that this Court has a wide range of injunctive remedies available. I think the cleanest would be dissection from the hotel because that would cut off the— Do what with respect to the Trump Hotel? That he would divest himself from the hotel. What do you want us to do in this appeal? In this appeal— You're not asking us to divest anything. You're asking us to rule on the 1292B question. And I would ask the Court to deny— Before starting a journey, I'd love to have some idea of where I'm going to end up. And I want to know—it goes to the whole redressability aspect of standing, and I would like to know exactly what you would want us— What you're asking. I mean, we can't enjoin foreign visitors from using the hotel. You can't put a single asset in a blind trust. What are we, to close the hotel for the president's terms or to cut off any beneficial interest that the president has in the hotel? It strikes me that these are pretty bold examples of interference to undertake without some support from Congress. What do you want from us? What are you asking us to do? So I think there are two— Dr. Wilkerson has a great question. And in answering that, I would ask that you also address first, what is the injury that you allege occurs here? And then tell us how does that injury get addressed? Sure. So you get away from bonds and things like that. If I may take the questions in order, I think Judge Miles and Judge King were asking what I would like the court to do here in this case, and that would be to deny the mandamus petition because we do not think it's available to certify— And that's all you want us to do. All I want you to do, yes. And secondarily, because as the D.C. Circuit found, there's not a clear and indisputable right to mandamus relief of the underlying dismissal. But where do we end up? What is the— You know, you don't get on a train unless you know the destination. And so to answer Judge Wilkerson's question about what we want to end as litigation, injunctive relief that addresses the emolument violation. I think that's a disaster. We don't even know what an emolument is. I mean, is an emolument— If the president keeps the Trump Hotel open and has a beneficial interest in whatever remuneration comes from that, is that an emolument? I have no idea. If that isn't an emolument, and we're sort of making it up whether it is or it isn't, aren't we making a ruling that is going to make public service very inhospitable to people with a business background, people with successful businessmen or not-so-successful businessmen? Will they even want to go into public service if their beneficial interest is going to be cut off, if they're going to have a divestiture, which is traditionally a disfavored inequity, at some sort of fire sale? Are we making the public sector and public service increasingly hostile to those with a business background? Obviously, that's only one of many, many backgrounds that should inform governance, but we're trying to erect bars and hurdles to those with business experience getting into public service because the one thing they would like to know is have some sort of certainty as to what to do and what would happen with their investments and their assets. And we're providing nothing by way of certainty but a gigantic cloud of uncertainty, which cannot help but operate as an impediment to those with a business background seeking public office. So I think there's a lot in your question, Judge Wilkinson. So if I can start with, there are federal officials with business backgrounds that deal with emoluments clauses all of the time. That's why we have a body of office with legal counsel precedent involving everyone from the president down to former military officials who want to live in foreign countries. We also have the backdrop of all the comptroller generals who need to give context to the emoluments clauses. Was President Carter in violation of the emoluments clause when he continued to have a beneficial interest in the peanut farm? He put a peanut farm into a blind trust. And so I'm not talking about the meaning of the emoluments at the margins. What we're talking about here is that the president is using the hotel to solicit foreign and domestic business that we know is floating directly to it. He's keeping the hotel open at a market rate. Why is that using the hotel to do this or that or whatever? That might be one of the problems that Judge Wilkinson has outlined. It might be a problem that you would have down the road. Absolutely. We aren't just fighting this case today, are we? And that is my next response to Judge Wilkinson, Judge Moss, is that we are at the inception of litigation. We have not done a clear motion to dismiss thresholds. We have profounded subpoenas that do not go to the president's internal affairs, so I think this puts this case much far afield of Cheney. And if we cannot establish any of our aspects of our litigation as summary judgment, or if we prevail, the president has the ability to come back to this court on an appeal from a final judgment and bring all of the questions that he is raising now. Counsel, I'm sorry. Counsel Foley, I'd love for you to address Judge Diaz's question from earlier. He suggested that the end of the day, and I understand your divestiture suggestion for injunction, Judge Diaz suggested that there might be injunctive relief that you're seeking in this suit that does not run to the president, but instead runs to a corporate entity or some third party. Is that part of the claim that you've made, is a third party injunction? So I think it's possible. The Second Circuit had a couple of different varieties. You know, we can do that as a subpoenaed option, but all we want to do is separate foreign and domestic government profits from the president. And so that can be accomplished in several ways. Do you need to do that? Do you need to have the third parties in order to have an injunction running against them? So, I mean, especially I think that the Second Circuit's third party injunction is a bit curious because the president is the party in the case. We do think that divestiture against the president is something that is not foreclosed by the Supreme Court president and is something that inequity to stop an ultraviolet act is absolutely essential to us. But also, this will be framed, going back to Judge Wilkinson. The president is the party to this case. The third party is not a party to the case. It's the president of the United States that's the defendant in the case. That's the party. And Judge Wilkinson, that's why I'm not advancing what the Second Circuit had in its footnote. What I'm saying is there's a variety of options that will be informed, as Judge Motz notes, by the litigation of the facts as they develop on the ground. I have a question about that, counsel. You noted we're at the outset, and I'm curious, actually, if that's true or why that's the case. If the monuments mean what you say they mean and the district court adopted your definition, then why aren't you entitled to release now? What do you need in discovery to get an injunction? Well, Judge Rushing, we've made allegations that foreign and domestic governments have been spending money on the hotel or were a sample of the GSA lease in a monument. We have found a discovery to try and determine whether those allegations have substance. If they do, then we believe we would be entitled under our definition of a monument. If, as a result of this targeted discovery, which I must add does not go to the office of the president, if the result of that is that we can prove our claims, I think we go forward. I guess my question is your definition of a monument is any gain or profit, right? So if foreign officials are spending money at the hotel, which you have newspaper reports saying they are, then that's a gain flowing to someone who has an interest in the hotel, you say, is satisfied under your definition. So I guess I'm curious what discovery would produce for you, other than you kind of already answered the legal question in the district court, right? So I think newspapers alone are not discovery that shows that our allegations are proven. I think that we feel very confident that we will be able moving forward to prove our allegations. I guess you don't need much, though, is my question, right? You're not trying to get damages. You need one instance, right, really, to get an injunction. And I think that's all the more reason that this court shouldn't be exercising jurisdiction now because we think this case could be very straightforward, could be resolved quickly on motion for summary judgment, and then if the president is satisfied, or if we are, the district court. But you said you think it'll take about six months of discovery. That's not particularly quick. Well, so I confess I'm no trial lawyer, but in my limited experience, discovery takes a lot longer than six months in a routine business case. And so we think we can— Is this a routine business case? No, we think this can proceed expeditiously, which is why I think six months' discovery and getting to summary judgment quickly is sort of answering the question of whether the president has violated any monument deposits is not something like the protracted multi-disciplinary process that I'm familiar with seeing when I look at trial records. Let me—if I could ask one other— back to your suggestion that divestment might be a relief that you say is the cleanest. If the president, putting aside for the sake of discussion the earlier preliminary points, if that were to be done, that would be done by the president individually, correct? Absolutely. But the emoluments clauses, and I think this is not unique in the Constitution, are clauses that affect an individual's private behavior by virtue of their official position. Well, my point, though, the divestiture would be done by the president as an individual. Am I right about that? If that's what you seek and we got past all these other hurdles and that's what was ordered? Certainly. I mean, the president is, at the end of the day, an individual. So you would seek essentially an injunction at the end of the day that requires the president individually to do something. Yes, by virtue of the fact the emoluments clauses apply to him in his official capacity. And he's not a party in his individual capacity to this case. So the emoluments clauses, I think, much like the incompatibility clause, apply to the private behavior of individuals by virtue of their federal office. And so the emoluments clause only applies to presidents as an individual because he is president. And so asking him to divest the hotel or whatever the ultimate outcome might be is no different from any federal official. And I think the OLC opinions make this quite clear that the emoluments clauses apply to private conduct. I mean, there are OLC opinions that say it was okay for the prince of Prussia to give gifts to people. So, I mean, those are helpful to us to look at, but I don't think they really bind us a whole lot. Well, certainly they're not binding. But under no canning, I think they inform the practice. And I think also we know that federal officials, because the foreign emoluments clause applies to every federal office holder, including all of the judges, have to interact with these questions and go to offices of government ethics to figure out how to deal with this conduct. And, yes, sometimes that involves effecting your own private conduct to make sure that foreign and domestic officials do not ingratiate themselves to the individual in the private conduct. So I do see that I'm out of time. But I do want to get back to the fact that I think that this court should not reach any of these interesting questions at this point because we are on a mandamus decision. Let me ask you, under the relief that you're proposing, if the president were to transfer his ownership interest to his son, that would end it, right? Absolutely. Assuming his son is not a state official or a foreign official. I want to lead up to something. The hotel would still be called the Trump Hotel, right? And you would expect that foreign officials will still spend their money there. But instead of the money going to the hotel, the money goes to the president's son, right? Under that relief. Yes. Okay. So we have a hotel in Washington. It's called the Trump Hotel where the profits are being spent by foreign officials and the profits go to the president's son and the people keep coming. How is the state of Maryland adversely affected by the fact that the money is going to the son as opposed to going to the father? So, respectfully, Judge Niemeyer, I think that poses a hypothetical that doesn't square with... Well, it's a hypothetical except that's what you're requesting. But it doesn't square with the doctrine of competitor standing. Of course it doesn't. What you're proposing is that... There is no demonstrable logical economic effect that the state of Maryland is hurt by the fact that there is a dividend or a profit of some kind paid by the hotel to the president as opposed to paid to his son. The competition interest that is being talked about in this case is the existence of the hotel named the Trump Hotel in Washington in competition with the facilities that are owned by the District of Columbia and Maryland. No, it is the ability of foreign and domestic officials to ingratiate the president specifically by tendering emoluments... And you think that's going to change, right? The fact that the president doesn't get right now, as a matter of fact, I understand the president doesn't get any of those profits from the foreign agents. So instead of his donating them, he just gives his interest to his son. It's not going to change a thing. We're under the same status quo, and the state of Maryland's interest is so attenuated, it goes through the fact that, okay, that somehow is going to increase the benefits to the convention center in Maryland. And, therefore, the state of Maryland has an interest because now the hotel's competitive interest is diminished, and, therefore, Maryland's interest is increased, and Maryland now has a standing. That's their interest. That's a competitive injury. That's a leg. I can't figure that out. Our competitive injury is not being able to compete on equal footing, because we can offer the same types of amenities as the Trump International Hotel and our competitor, but we cannot offer the ability to ingratiate individuals to the president. If you remove the president from the equation, you've taken that... You're not removing the president from the equation. The president can still invite him there. All you're removing is a stream of income that goes from the hotel to him as an owner, and if we divest and have it go to his son, he assigns it to his son, it's still the hotel, and he can still ask the prince of Saudi Arabia or whatever, you ought to come and stay in the hotel. Is that an emolument? And he's not the recipient of the profits, and so then it's not an emolument. That adversely affects Maryland because his son's getting it, not him? It would curate a competitive injury, which is the inability to compete on equal footing, because we cannot offer the opportunity to send an emolument. It doesn't change the competitive formula. There's no calculus in which that transfer from the father to the son changes the competitive analysis. That's what the Second Circuit dissent said. I respectfully disagree, Judge Niemeyer, because you're presuming that no economic actors would change their behavior if they didn't have the ability to ingratiate themselves to the president and the president's position. They're still going to ingratiate. They're going to the hotel so the son gets a profit and the president asks them to come. And while we might find that conduct unsatisfactory, the Constitution doesn't speak to it. What the Constitution speaks to is not having the president in his own family, through his own private businesses, getting and receiving foreign and domestic profits. In other words, the emolument applies to the president. Absolutely. He could ask them to go to a whole bunch of other clubs, as long as it's not the president. You may get a benefit from it. But let me ask this question, because I'm just curious from the opponent's position on this. Even if you went and discovered, proved everything there and more of what was going on, my understanding is that the position of the president, you can't do anything about it, because Congress hasn't acted, so there's nothing you can do. Is that true? I think that's the position. I mean, the worst-case scenario. Don't take the minimal scenario that's been asked. Go to the worst. The president gets up there and says it out loud, speak it to everybody. If you come to my hotel, it's a good thing, and I need you to come here and advertise and just be here. Nothing can be done. Is that the end of the answer? That is absolutely his position, and I think that it's squarely foreclosed by Armstrong and a long lineage of cases that allow equitable relief to enjoin ultramarriage action by federal officers. That is not his position. His position is not that nothing can be done. His position is that there is a political process whereby something can be done. His position is that there is a Congress whereby something can be done. His position is that there is a court of public opinion by which something can be done. When the president wanted to hold a G7 convention at Dorial or whatever, people didn't throw up their hands and say there's nothing that can be done. There was immense pressure brought against what was an overstep in using that particular piece of private property for a piece of public business. But that shows you that, yes, something can be done. And litigation is not the only way to getting something done, because there was an immediate corrective to that Dorial business, which caused the president to back off from what many in Congress across party lines thought was a terribly inadvertent step. But it isn't fair to his position to say that nothing can be done. It's just that there are other avenues than this particular manufactured suit. Let me be clear, because I think Judge Wilkerson makes a good point. We're not talking about nothing can be done. But let's speak to reality. Essentially, everything, even the Dorial instance, is something the president chose to do. No one could do anything about it. The Congress hadn't done anything. Public opinion can be there. What I'm saying is that the equitable powers of courts, that separate branch of government, if you have a Congress that's absolutely inactive, and I think we can all accept that's probably the case here, a president who goes right up to the line or right over the line, this court and the courts, as I understand it, the courts can do nothing about it. That is what I understand his position to be. And Judge Wilkerson said the fact that there might be a court of public opinion does not deprive this court of equity jurisdiction. The fact that there are multiple ways to skin the cat does not mean that this court should not act. Except the Constitution designs mechanisms, and the mechanism the Constitution designs with respect to the president is not to have him engaged in private litigation, but to impeach him if there's a problem. He can be removed from office, or he can be voted out of office. But to sue the president is a matter that is unclouded ground, and under the structure of the Constitution, the Supreme Court has not been very kindly to that. Now we have this district court that says we can sue the president because that's what I think. The Supreme Court's decisions in Nixon v. Fitzgerald and Clinton v. Jones I think directly speak to this. The president is not immune from judicious process in all circumstances. And so I think here, especially when you're not looking at something within the inner workings of the official office of the president, we're talking about things that are farther up the margin and that are expressly prohibited by the Constitution. I think we're just back in the Armstrong territory of this court's equity jurisdiction to enjoin ultraviolent action. But my view is not that the courts are powerless. The courts are not powerless. The courts can do a lot. But we're in a far stronger position if we just have the tiniest bit of guidance and cooperation with Congress. You do things in governance in conjunction with the other branches. You don't just go it alone. We're in our weakest possible posture in this case, and I fear that we're going to be tossed into the partisan scrum, which is unfortunate because I think that when partisan fevers grip the country the way it is, it is best sometimes for the courts to back off and say, we don't want to be part of it. We want to be dedicated to what we all are dedicated to, which is the rule of law, and I can't see how the rule of law is vindicated by a suit that is wholly unprecedented in nature and that is taken on a solo basis. We're flying solo and taking a provision which is not self-executing and writing our own cause of action, which is, last time I checked, I thought to be a legislative, not a judicial matter. So I know I'm well over my time, but I do have a few responses. So first and foremost, this is not a political suit. This is an action where the president has taken the unprecedented step, punching at every other president, every other federal official. I want to interject and say at that point, I want to have not to quarrel with my good friend Judge Wilkerson in the partisan perspective. Whatever this court does is going to apply to every president. It doesn't matter what parties they belong to. What we are doing is essentially not just this president we're talking about. We're talking about every future president, and what we do today is going to apply across the board, and this is not the only instance this may come up. Absolutely, and we know that because every other president has sought guidance from the Office of Legal Counsel or the Comptroller General about how to order their affairs. We are here because President Trump has not. No, we're here to determine whether a writ of mandamus lies, and we're having all these interesting discussions about what might happen when this case comes back to us. But, counsel, aren't we really here to determine whether the district court has usurped its judicial authority? And I'd ask you, if you would, to get us back a little bit to that point that I think is the point at issue today. It is where I started, Judge Keenan, because I do think it is dispositive. Every court to have considered the question has held that mandamus is not an appropriate vehicle to demand a 1292B certification. Judge Frensley, I think, very clearly explained that Congress intended there to be a dual state superstition. What about the 11th Circuit case that your friend cited at the beginning of his argument? Judge Keenan, the 11th Circuit case is, I think, similar to the D.P. Circuit case, where it was an instruction to certify. I think what's interesting is it also relies on the Fifth Circuit and the Cleveland case, which, I think, did the same thing as the 11th Circuit. When that case came back up to the Fifth Circuit, what the Fifth Circuit expressly said was the district court still has the jurisdiction or the discretion to deny the certification decision, even though the Fifth Circuit had it sort of put its thumb on the scale. And I think that speaks to the fact that the district court is the first and sometimes the last. So is it your view that this sort of dual gatekeeper role that 1292 seems to contemplate is absolute in every case? It is, because it is a limited exception to the final judgment rule. Do we need to say that in this case? I think this court would just have to apply 1292B as this text suggests, which is when the district court is of the opinion, the certification can be appropriate and it kicks to this court to determine whether to take it. But where the district court, in a thorough opinion, was not of the opinion that the 1292B criteria were met, that's the end of the matter. If the president wants to come back on an appeal from a final judgment or in a change-type situation of some other order he finds particularly odious, that could be a vehicle of getting back to this court. Or we just dive into this case and go through rounds and rounds of discovery and the like without having the slightest idea of what remedy we want or what the source of the right is. All these other questions, it's like starting the journey without knowing where you're going. How many people buy an airplane ticket, get on the plane, and have no idea where the plane's going to land? I think I know exactly where this plane is going to land. We believe we've ordered a plane to tell the president not to be accepting foreign and domestic profits We think that the end result of that is injunctive relief. That's such a general formulation. It gives guidance to no one. I think there are very clear allegations in our complaint, the GSA lease. I think there are also allegations that have come forward since the complaint, such as the main governor, the governor of Kentucky. So we believe that we have cleared the initial motion. The whole purpose of litigation is to figure out where the plane is going to land. You never have any absolute certainty in any case. That's why we litigate cases. Absolutely. We think we are headed in the direction that we would like to be headed in, but we also think we've cleared the initial threshold. I don't want to overplay this airplane analogy, but we've gotten through TSA. I think we should be allowed to board our plane and see where the litigation takes us. I think Congress expressly mandated that in 1292B by making it a full gatekeeper. To have a litigation process, you have to have the assertion of a right and a plausible claim to a remedy. And the problem is, there is no right here that has been conferred on anyone by this particular provision. And the Supreme Court has rejected that time and again. If you look at free enterprise, if you look at bonds, there are structural provisions of the Constitution that those professionally- More often it has held them non-justiciable. I grant you there are some that have been held justiciable, but the bulk of them have been held non-justiciable, and it's crucial. That this particular monumentous clause was placed where it is, and not in the Bill of Rights or without any rights-conferring language. But just as the appointment clause in free enterprise or bicameralism in Shada, we believe that it's a routine exercise of this Court's equity jurisdiction to vindicate structural provisions of the Constitution. Of course, that is not a question this Court needs to reach today, because what we are looking at is whether mandamus is appropriate to take jurisdiction under 1292B. We think it is absolutely not. And then there's the secondary question of whether or not mandamus to outright dismiss the case is appropriate. We also think that that's not appropriate, and the D.C. Circuit agreed with us because it found no clear and indisputable right to relieve ultimate dismissal when it went and- Well, the D.C. Circuit said it was not going to wade into the question of mandamus. Respectfully, Judge Agincourt said- Well, I'm quoting what the D.C. Circuit said. It was not going to wade into this question about whether mandamus was appropriate for 1292B. I'm speaking to the secondary question in the mandamus petition, which is mandamus outright to dismiss. And what the Court said is, although Plankett has identified substantial questions concerning standing and the cause of action, he has not shown a clear and indisputable right to dismissal of some plaint on either of those grounds. So, absolutely, it declined to wade into this brewing circuit split about whether mandamus of 1292 is appropriate. But he's quite clearly- But mandamus is focused on the usurpation of judicial power. The Supreme Court has recognized that you can direct the Court to get out, which is dismissal. And so there are two avenues for mandamus that the President has sought. 1292B, which every Court has considered has- 1292B was-the mandamus was because the Court refused to let us review the question. But the question comes up because the Court made an analysis under 1292B that was a clear abuse of discretion. But the question then comes, is clear abuse of discretion was exercised or abuse was exercised in a circumstance where the Court usurped judicial power. And the Supreme Court, for instance, in the Schlagenhoff opinion, basically said those are the two alternative things, usurpation of judicial power or clear abuse of discretion. That was quoted again, of course, in Cheney. And considering that very question, the D.C. Circuit held that he's not shown a clear and indisputable right to release or dismissal of the entirety of the suit. It didn't get into it. It said it's a clear abuse of discretion in certifying and refusing to certify and asked the Court to look at it again. And as you know, the District Court then certified. And it went right back up, and that's where it is. So they took an extra step. We didn't take that step. So I want to be absolutely clear about the two types of mandamus the President is seeking. The first is for certification under 1292B. That is the dispute the D.C. Circuit elected not to weigh into. And that is the question that every Court of Appeals has considered has found to be inappropriate. There is a second request for mandamus to outright dismiss the complaint. That is something that the D.C. Circuit did consider and found that there was no clear and indisputable right to dismissal on that basis. So I think we win on both theories of mandamus for many of the same reasons that the D.C. Circuit had on the underlying order, but also because every Court of Appeals has considered the 1292B question and felt that certification is inappropriate. I know I'm well over my time. Thank you, Counsel. Thank you very much. I have four points I'd like to hit. I'd like to start with the mandamus standard, and Dr. Keenan, I want to address some of your questions about that. You're absolutely right that mandamus is an extraordinary type of relief, and it's only available on the quote, the burden of showing that the right of a petitioner to the right is clear and indisputable. We don't dispute that. But here's what Janie further said, and this is very important, that only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion. Or, in the distrust of the Supreme Court, it is made totally clear that a clear abuse of discretion does satisfy one of the problems of the mandamus standard. Point two. Now let me show you why that standard was met here. Let me start with the 1292B standard, and Judge Diaz, as I said during my opening argument, her position is that no matter how flagrantly the district court abuses its discretion under 1292B, there is nothing this court can do about it. You ask that point five, and she answered, and that's the necessary implication of her position. She has to read 1292B to strip this court of any power to supervise a district court. Well, counsel, I guess I'm not following why that's right. As I understand her position, and this is awkward because she's not standing up there anymore, but the position is that we can't use mandamus to order a district court to certify a question under 1292. But there's this alternative ground that's at issue in this case. We could use mandamus, for instance, to order a district court, you know, to quash a particular discovery subpoena. We can still get at the underlying problem if we think a district court has usurped its judicial authority. And she goes on to say that's not, as the D.C. Circuit held, that one doesn't apply here because there's no clear and undisputed right. But again, Your Honor, as I... Just to be... Do you understand the position differently? I totally understand what you're saying, but I think what I would respond to is she's saying there's no way at all to get at the abuse of discretion in the certification. As I told Judge Keenan and the rest of the Supreme Court, abuses of discretion are available, mandamus is available, and she is saying that something about 1292B strips this court of that general power in this particular context. But why does it matter if we can... Why... I mean, I thought even your opening argument, and it was certainly your argument before the panel, is this would be a lot more straightforward if you would just direct mandamus to dismiss this case. Who cares whether we can get them to order a district court to certify a question for direct appeal, and we can do that. So I'll say two things about that, Your Honor. The one is I certainly agree, and that's going to be my third point, but here's why it matters. It matters because of Judge Niemeyer's question. The standard to get mandamus of the 1292B is whether there's a clear abuse of discretion about whether there's a substantial legal question. This court wouldn't have to bite off the question of whether it was a clear and indisputable error to not... Well, it also has to be controlling and contribute to the sort of speedy... Well, but it's fairly controlled. Excuse me, and I read the district court's very careful, reasoned decision on this, and the district court relied very heavily on the idea that as to standing, the government had only identified one of the three possible bases, so even if you got an interlocutory appeal on that, it actually wouldn't bring the litigation to a quick close, and that on the merits, even under the government's theory, the plaintiffs would still have a cause of action. There was a lot of discussion by the district court, not only about substantial difference of opinion, but about things that were very particularized to this particular case, the litigation strategies of the parties, and so I feel that we're not really discussing the basis for the district court's decision. With all due respect, Your Honor, that has got to be incorrect. I know the district court said those things, but it has got to be incorrect, because one of our theories is that the president and the subject is not subject to suit at all, and if we are right about that, the case is over. There's nothing to talk about anymore. There's no further proceedings. There's nothing. The case is over. So if we are right that there is at least a substantial legal question about whether the president is subject to suit, it is a clear abuse of discretion. But if there's a substantial legal question as to standing, which you were arguing about before, the district court might still be right. So I have a longer answer for why they're wrong about that. You don't have to give it to me. They just misunderstood our theory. Okay, so we should issue mandamus if the district court misunderstood the theory. They clearly misunderstood our theory, but again, on the president not being subject to suit, that's the end of it. If there is a substantial legal doubt, or a substantial legal question about that, which I think there is, which I'll describe in a second, if that was a clear abuse of discretion, a clear one, she is saying that you as the public court can't do anything about that. And that is a misogyny. To use her example, it's like if TSA let a guy through with a loaded gun, and the supervisor just says, well, I hope he doesn't bring down the plane. There is nothing about 1292B that puts this court in that position. Frankly, I think that's your position. No matter what the president does, there is nothing that TSA slash the courts can do. And that's a great segue to my third point, and my answer to Judge Harris. Again, let me read from the Supreme Court decision of Franklin v. Massachusetts. The president is not explicitly excluded from the APA's purview, but he is not explicitly included either. Out of respect for the separation of powers and the unique constitutional position of the president, we find that textual silence is not enough to subject the president to the provisions of the APA. Our position, as Judge Wilkinson pointed out, The APA is in the Constitution of the United States? It's a statute that authorizes constitutional claims. Right, but it's not in the Constitution. That is correct, Your Honor. It's not a clause in the Constitution. And the Constitution does not, of its own force, allow people to sue. As she pointed out, and correctly, she is invoking not a constitutional... Was your colleague on the other side? Yes, Your Honor. My colleague on the other side, I apologize. Counsel, even? Counsel, on the other side, pointed out, correctly, that her claim is not based on the Constitution itself. It is based on an implied cause of action in equity. The court's equitable jurisdiction comes from Congress. In fact, if you look at Supreme Court decisions in the group of Mexico, it is a grant of equity jurisdiction from Congress. And it's implied. That's why this quote from Franklin is so important. The quote from Franklin says, absent a clear statement from Congress, you can't sue the President. Even if you set aside Franklin, if you look at the Supreme Court's equitable cases, they say, in cases like Rubio-Cano, it has to be a traditional form of relief. If it is an extension of traditional forms of relief, Congress has to do it. And they cannot point to a single instance where the Supreme Court or an appellate court, with one exception from D.C. from 40 years ago, has allowed a suit against the President in an official capacity. It is clearly a radical extension... Well, tell me about the Second Circuit. The Second Circuit?  The Second Circuit didn't reach its question, Your Honor. It just didn't. The district court only addressed... Because nobody had mandated anything there, right? Well, no, because we won in the district court. Well, and there was a reversal of your win. No, that's right. But, so, you asked why the Second Circuit. We won in the district court on standing and zone of interest. The district court didn't reach our argument that the President is not subject to suit. So the Second Circuit didn't reach that. But the gist of the questions that have come here is that what we're supposed to do at this stage is to look down and see where you're going. And if we cannot foresee that you would be getting relief, then we should grant it, mandate it. Isn't that fair? I think... We want to see where the airplane's going before we get on. I think it's clear from right now that that airplane's going to crash. I understand what you're saying. So that's your position, so that the Second Circuit wouldn't be contrary to that position. The question wasn't presented. The district court hadn't... Well, if the question is, because the airplane flies, it certainly was. Your Honor, the appellate courts don't typically rule on questions that the district court hasn't ruled on yet, and that's why the Second Circuit didn't address it. Well, it seems to me that in the discussion that we've had today, there are a whole bunch of questions that haven't been ruled on yet. I don't think that's right, Your Honor. Every single one of the arguments I've made thus far is something we've argued below and the district court rejected. Is there a reason you guys... I'm sorry, is there a reason the government did not speak mandamus in the Second Circuit to sort of dismiss the case outright because whether or not they're standing, nobody can sue the president? We won below. Nobody knew that. By the time you got to the Second Circuit, it was right. You didn't offer any alternative grounds. Because it wasn't... We won below on jurisdictional grounds, and so you couldn't affirm an alternative grounds on a non-jurisdictional basis. Okay. Good. Well, we'll wait to see what they say. And one last one with your court's indulgence. I do think I want to just make two quick points about the merits. There have been a lot of concern, and I understand why people would be concerned about the president being able to act above the law, without laws. I think it's important to emphasize, to conclude my argument today, with just a brief explanation of why we think that their claim is wrong on the merits of the Emoluments Clause. I think one of the key points I was going to make is the argument received by Judge Paul Romm and Judge Beebe's question. Their theory of any profit can't be right, and they abandoned it today by adopting this discretionary assumption. I don't know where it came from. They said, apparently, you have to look to history. So let's look to history. And this will be my final point. In 1810, and we put this out in our refining, in 1810, there was a proposed constitutional amendment to extend the Foreign Emoluments Clause to all citizens. That constitutional amendment was passed by overwhelmingly in Congress and nearly three-quarters of the states. So what that means is that my colleague in opposing counsel's position today is that almost the entire country almost passed a constitutional amendment where the senator said foreign diplomats could not buy food, housing, or lodging. They would, I assume, both have to starve to death in the street. That is what they are interpreting the Emoluments Clause to require. It is just simply not tenable. It is a totally ahistorical, ahintextual interpretation of the Emoluments Clause. The clause has never been understood to cover profits from commercial transactions. Thank you, Your Honor. Thank you.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum, Rushing